IN THE CIRCUIT COURT
FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| MICHELLE WILLIAMS<br>F/K/A MICHELLE DARGAN<br>1027 RADNOR AVENUE<br>BALTIMORE, MD 21212<br><br>Individually and for All Others Similarly Situated<br><br>Plaintiffs,<br><br>v.<br><br>LENDMARK FINANCIAL SERVICES, INC.<br>2118 USHER STREET<br>COVINGTON, GEORGIA 30014<br><br>SERVE ON:<br>The Corporation Trust Incorporated<br>351 West Camden Street<br>Baltimore, MD 21201<br><br>Defendant. | CLASS ACTION COMPLAINT<br><br>JURY TRIAL REQUESTED<br><br>Case No. _____ |

## CLASS ACTION COMPLAINT AND PRAYER FOR JURY TRIAL

Plaintiff Michelle Williams ("Named Plaintiff" or "Williams"), individually and on behalf of all others similarly situated, through her attorney Cory L. Zajdel of Z LAW, LLC, hereby submits this Class Action Complaint and Prayer for Jury Trial against Defendant Lendmark Financial Services, Inc. ("Lendmark Financial") and for support states as follows:

### I. PRELIMINARY STATEMENT

1. Named Plaintiff institutes this class action against Lendmark Financial individually and on behalf of all others similarly situated for violating statutory, common law and contractual obligations and seek to recover actual damages, statutory damages, interest, attorney fees, and the costs of this action against Lendmark Financial for multiple violations of the Maryland's Credit Grantor Closed End Credit Provisions, Md. Code Ann., Comm. Law §§

EXHIBIT 1

12-1001 *et seq.* ("CLEC"), Md. Code Ann., Comm. Law § 14-1315, Maryland's Consumer Protection Act, Md. Code Ann., Comm. Law, §§ 13-101 *et seq.* ("MCPA") and Maryland Common Law.

2. Lendmark Financial is a sub-prime lender and extends credit at stated simple interest rates as high as 24%.

3. Each financing contract elects CLEC as the governing law of the financing contract.

4. Lendmark Financial extends financing to many borrowers in Maryland each year.

5. Lendmark Financial has issued more than one thousand CLEC loans in Maryland each year from 2005 to the present.

6. Because Lendmark Financial offers sub-prime loans that are mainly issued at a stated simple interest rate as high as twenty-four percent (24%), many borrowers fall behind on their loans, which leads to the assessment of late fees.

7. Lendmark Financial routinely overcharged Class Members for late fees.

8. Lendmark Financial routinely failed to give Class Members the grace period provided by contract for late payments.

9. Lendmark Financial routinely failed to give Class Members the grace period provided by statute for late payments.

10. Lendmark Financial also fails to properly disclose the timing and amount of the late fees it will assess against Class Members as those terms must be disclosed by statute.

11. Lendmark also regularly applies Class Member payments to late fees rather than directing Class Member payments to scheduled monthly payments.

2

12. As a result of Lendmark Financial's acts and omissions, Maryland law enables Named Plaintiff and the Class to seek and recover compensatory damages, statutory penalties and damages, and declaratory and injunctive relief.

13. Lendmark Financial's violations of Maryland law have enriched Lendmark Financial unfairly at the expense of Maryland borrowers, a practice this suit seeks to end.

14. Lendmark Financial's uniform financing contracts, servicing practices, routine premature charging of late fees to the Class and uniform failure to properly disclose the timing and amount of the late fees makes this case particularly suitable for resolution through a class action lawsuit.

## II.   JURISDICTION

15. This Court has jurisdiction over this case and Lendmark Financial under Md. Code Ann., Cts. & Jud. Proc. § 6-102(a), as the transaction underlying the facts of this action arose in this state and Lendmark Financial does substantial business in this state.

## III.   PARTIES

16. Named Plaintiff Michelle Williams is a natural person currently residing at 1027 Radnor Avenue, Baltimore, MD 21212.

17. Named Plaintiff Michelle Williams was formerly known as Michelle Dargan.

18. Williams is a "consumer borrower" as that term is defined by Md. Code Ann., Comm. Law 12-1001(f).

19. Defendant Lendmark Financial is a corporation organized and operating under the laws of the state of Georgia, doing business within Maryland at multiple brick and mortar locations and with its principle place of business located at 2118 Usher Street, Covington, Georgia 30014.

20. Lendmark Financial is a "credit grantor" in each Class transaction as that term is defined by Md. Code Ann., Comm. Law § 12-1001(g).

## IV. FACTUAL ALLEGATIONS

### A. *Loan Transaction Between Named Plaintiff Williams and Lendmark Financial*

21. On or about November 17, 2009, Williams obtained financing from Lendmark Financial secured by personal property.

22. The financing obtained through Lendmark Financial was memorialized in a Combination Statement of Transaction, Promissory Note & Security Agreement ("Promissory Note").

23. The Promissory Note affirmatively elects to be governed under Subtitle 10 of Title 12 of the Commercial Law Article (i.e. Maryland's Credit Grantor Closed End Credit Provisions – hereafter "CLEC").

24. In connection with the November 17, 2009 Promissory Note, Lendmark Financial charged Williams for a refinancing fee and processing fee.

25. In connection with the November 17, 2009 Promissory Note, Lendmark Financial sold Williams credit life insurance and credit disability insurance.

26. Williams entered into the Promissory Note primarily for personal, family and household purposes.

27. Williams' loan from Lendmark Financial totaled $2,720.72.

28. The stated annual percentage rate was 20.24%.

29. Williams was scheduled to make 36 monthly payments each totaling $102.23.

30. The last payment on Williams' loan from Lendmark Financial was scheduled for December 1, 2012.

31. The total scheduled monthly payments on Williams' loan including all scheduled interest and principal payments was disclosed as $3,680.28.

32. Due to interest, fees and other charges added to the account by Lendmark Financial, Williams is still making payments on the loan as of the date of the filing of this Complaint.

33. As of April 23, 2013, Lendmark Financial has collected $3,901.94 in total payments from Williams with respect to the loan account.

34. As of April 23, 2013, Lendmark Financial claimed a balance due and owing on the loan equal to or greater than $850.38.

35. Lendmark Financial accepted and received monthly payments from Williams including principal, interest, fees and other charges.

D. *Late Fees Disclosed and Assessed to Named Plaintiff*

36. Any late fees charged by Lendmark Financial in the servicing of the Promissory Note under CLEC are governed by the contract itself and subject to the limitations proscribed by Md. Code Ann., Comm. Law § 14-1315.

37. Under the Promissory Note, no late fee can be charged and/or assessed until after the stated grace period of five days after the scheduled due date.

38. Under § 14-1315(f)(1)(i), any late fee charged and/or assessed shall not exceed the greater of "$5 per month, or up to 10% per month of the payment amount that is past due"

39. Under § 14-1315(f)(1)(ii), any late fee charged and/or assessed shall not exceed "1.5% per month of the payment amount that is past due."

40. Under § 14-1315(f)(2), the "amount of the late fee . . . shall be disclosed, in the consumer contract or by notice, in size equal to at least 10-point bold type."

41. Moreover, under § 14-1315(f)(3), a late fee shall not be charged and/or assessed "until 15 days after the payment amount becomes due."

42. Accordingly, Lendmark Financial cannot charge and/or assess a late fee: (a) unless the amount of the late fee was disclosed in 10-point bold type or larger; (b) under the contract until 5 days after the due date; (c) under the statute until 15 days after any payment amount becomes due; and (d) greater than 10% of the past due payment amount.

43. Lendmark Financial violated the rights of Named Plaintiff and the Class by assessing and collecting late fees in violation of these consumer protections.

44. Named Plaintiff's Promissory Notes purported to allow Lendmark Financial to charge and/or assess late fees in a specified amount after the stated grace period.

45. Named Plaintiff's Promissory Notes each state that with respect to any late charge, "[i]f I do not pay any installment within 5 days after its scheduled or deferred due date, I agree to pay a late charge of the greater of 10% of the unpaid amount of the installment or $25.00."

46. This late fee language contained in the Promissory Notes is not disclosed in at least 10-point bold type or larger.

47. Lendmark Financial assessed late fees to Named Plaintiff and the Class prior to the expiration of her 5 day grace period after missing a scheduled or deferred payment.

48. Lendmark Financial assessed late fees to Named Plaintiff and the Class prior to the expiration of the 15 day grace period after missing a scheduled or deferred payment.

49. Lendmark Financial assessed late fees to Named Plaintiff and the Class in amounts greater than 10% of the unpaid amount of the installment.

50. Lendmark Financial's routine business practice is to assess late fees not permitted by Maryland law.

51. Lendmark Financial's form credit contracts provided to Named Plaintiff and the Class all contained inaccurate statements regarding the amount Lendmark Financial was allowed to assess for late fees under Maryland law.

52. Lendmark Financial's form credit contracts provided to Named Plaintiff and the Class all contained inaccurate statements regarding the grace period provided to Maryland consumers before a creditor can assess a late fee under Maryland law.

53. These inaccurate statements contained in form credit contracts regarding the amount of late fees and grace period prior to the assessment of late fees that Lendmark Financial assessed were also not disclosed to Named Plaintiff and the Class in the size required by Maryland law– "at least 10-point bold type."

   D.   *Lendmark Financials Servicing Violations*

54. Lendmark received numerous scheduled monthly payments from Named Plaintiff and the Class in which principal and interest were due along with a late fee previously assessed by Lendmark.

55. Named Plaintiff's Promissory Note states that "all payments by me shall be applied to scheduled payments in the order they become due."

56. Lendmark Financials routine business practice, however, is to direct any payment by Class Members to satisfy any past due late fees before the scheduled monthly payment.

57. This practice allows Lendmark to deem the current scheduled monthly payment made by Class Members incomplete and to churn late fees for the duration of the account on numerous future scheduled monthly payments.

7

58. This practice also allows Lendmark to increase the cost of the loan to consumers and increase its profits by increasing the daily accrued interest by pulling money away from paying down the principal amount.

59. Named Plaintiff and the Class were harmed by this servicing practice.

## V. CLASS ACTION ALLEGATIONS

60. Named Plaintiff bring this action on behalf of a Class which consists of:

> **All persons who were charged a late fee by Lendmark Financial in connection with a credit contract governed by CLEC.**

Excluded from the Class are: (a) those individuals who now are or have ever been executives of the Defendant and the spouses, parents, siblings and children of all such individuals; (b) any individual against whom a judgment has been granted in favor of Lendmark Financial on the account at issue on or before the date of the filing of this Complaint; (c) any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of his or her Installment Contract.

61. The Class, as defined above, is identifiable. Named Plaintiff is a member of the Class.

62. The Class consists, at a minimum, of several hundred (and likely thousands) of persons who entered into credit contracts directly with or that were assigned to Lendmark Financial and whose account was charged and/or assessed with a late fee, and is thus so numerous that joinder of all members is clearly impracticable.

63. There are questions of law and fact which are not only common to the Class but which predominate over any questions affecting only individual Class Members. The common and predominating questions include, but are not limited to:

8

(a) Whether a credit grantor can charge and/or assess late fees prior to the expiration of a 5 day contractual grace period in connection with a loan to a consumer borrower;

(b) Whether a credit grantor can charge and/or assess late fees prior to a 15 day grace period in connection with a loan to a consumer borrower;

(c) Whether Lendmark Financial charged and/or assessed late fees prior to the 15 grace period in connection with loans to the Class;

(d) Whether a credit grantor must disclose the amount of the late fee to be charged in "at least 10-point bold type" in connection with a loan to a consumer borrower;

(e) Whether Lendmark Financial disclosed the amount of the late fee to be charged in "at least 10-point bold type" in connection with loans to the Class;

(f) Whether a credit grantor can charge and/or assess late fees in an amount greater than 10% per month of the payment amount that is past due in connection with a loan to a consumer borrower;

(g) Whether Lendmark Financial charged and/or assessed late fees in an amount greater than 10% per month of the payment amount that was past due in connection with loans to the Class;

(h) Whether Lendmark Financial violated CLEC when it charged late fees in connection with Class loans prior to the expiration of the 15 day grace period;

(i) Whether Lendmark Financial violated CLEC when it failed to disclose the amount of the late fees in "at least 10-point bold type[;]"

(j) Whether Lendmark Financial violated CLEC when it charged late fees in connection with Class loans in an amount greater than 10% per month of the payment amount that was past due;

(k) Whether Lendmark Financial knowingly violated CLEC and therefore should be required to forfeit three times the amount of interest, fees and other charges collected in excess of those allowed by CLEC;

(l) Whether Lendmark Financial misrepresented in writing to the Class that it had the right to charge and/or assess Class Members late fees after a Class Member became five days late on any payment;

(m) Whether Lendmark Financial committed an unfair or deceptive trade practice by representing to the Class in writing that it had the right to charge and/or assess Class Members late fees after a Class Member became five days late on any payment;

(n) Whether Lendmark Financial failed to disclose in writing in the proper formatting to the Class the amount of the late fees to be charged to all Class Members;

(o) Whether Lendmark Financial committed an unfair or deceptive trade practice by failing to disclose in writing in the proper formatting to the Class the amount of the late fees to be charged to all Class Members;

(p) Whether Lendmark Financial misrepresented in writing to the Class that it had the right to charge and/or assess Class Members late fees in an amount greater than that permitted by law;

(q) Whether Lendmark Financial committed an unfair or deceptive trade practice by representing to the Class in writing that it had the right to charge and/or assess Class Members late fees in an amount greater than that permitted by law;

(r) Whether Lendmark Financial systematically assessed late fees against Class Members in violation of CLEC;

(s) Whether Lendmark Financial systematically assessed late fees against Class Members in violation of MCPA; and

(t) Whether Lendmark Financial breached the class credit contracts for each Class Member by failing to comply with CLEC.

(u) Whether Lendmark Financial systematically applied scheduled monthly payments toward the satisfaction of late fees prior to applying the payment toward the principal and interest owed on the account.

64. Claims of Named Plaintiff are typical of the claims of the Class within the meaning of Md. Rule 2-231(a)(3), and are based on and arise out of similar facts constituting the wrongful conduct of Lendmark Financial.

65. Named Plaintiff will fairly and adequately protect the interests of the Class within the meaning of Md. Rule 2-231(a)(4).

66. Named Plaintiff is committed to vigorously litigating this matter.

67. Further, Named Plaintiff secured counsel experienced in handling consumer class actions and complex consumer litigation.

68. Neither Named Plaintiff nor her counsel have any interests which might cause them not to vigorously pursue this claim.

69. Lendmark Financial's actions are generally applicable to the respective Class as a whole, and Named Plaintiff seeks equitable remedies with respect to the Class as a whole within the meaning of Md. Rule 2-231(b)(2).

70. Common questions of law and fact enumerated above predominate over questions affecting only individual Class Members and a class action is the superior method for fair and efficient adjudication of the controversy within the meaning of Md. Rule 2-231(b)(3).

71. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

72. Class Counsel is experienced in class actions, and foresees little difficulty in the management of this case as a class action.

## VI. CAUSES OF ACTION

### COUNT ONE
### (MARYLAND CREDIT GRANTOR CLOSED END CREDIT PROVISIONS)

73. Named Plaintiff re-alleges and incorporates by reference the allegations set forth herein, and further allege:

74. Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code Ann., Comm. Law §§ 12-1001, *et seq.*, restricts credit grantors such as Lendmark Financial from charging to consumers any fees, charges or interest not specifically provided for under a closed end credit contract or under the statute.

75. In the event, however, that the credit grantor assesses more than the stated rate of interest disclosed, charges for fees that are not specifically provided for under CLEC or assesses prohibited fees, the credit grantor must forfeit all interest, charges, fees and other charges with

respect to the loan.

76. Lendmark Financial charged numerous late fees to Named Plaintiff and the Class in violation of CLEC as stated in more detail herein.

77. Lendmark Financial charged numerous late fees to Named Plaintiff and the Class in violation of § 14-1315 as stated in more detail herein.

78. Lendmark Financial failed to properly disclose the late fees as stated in more detail herein.

79. Lendmark applied Named Plaintiff and Class Members payments to satisfaction of late fees rather than the scheduled monthly payment of principal and interest.

80. Any late fee charged in violation of CLEC or § 14-1315 is either interest, costs or fees and a finance charge.

81. Lendmark Financial knowingly engaged in these violations of CLEC.

## COUNT TWO
## (BREACH OF CONTRACT)

82. Named Plaintiff re-alleges and incorporates by reference the allegations herein, and further alleges:

83. CLEC and § 14-1315 were in effect at the time Named Plaintiff and all other Class Members' credit contracts were signed and Lendmark Financial specifically and unequivocally elected CLEC as the controlling law in its credit contracts with Named Plaintiff and all Class Members and incorporated the CLEC statute into the credit contracts.

84. Section 14-1315 is a part of every consumer contract and is therefore incorporated into Named Plaintiff and all Class Members credit contracts.

85. The provisions of the CLEC statute become a part of the contracts just as if the parties expressly included the CLEC provisions in their credit contracts.

86. Lendmark Financial made specific representations in its Promissory Note with Named Plaintiff and the Class.

87. When Lendmark Financial violated CLEC as set forth herein, Lendmark Financial materially breached its contracts with Named Plaintiff and the Class.

88. When Lendmark Financial violated § 14-1315 as set forth herein, Lendmark Financial materially breached its contracts with Named Plaintiff and the Class.

89. When Lendmark assessed late fees prior to the end of the 5 day contractual grace period, Lendmark Financial materially breached its contracts with Named Plaintiff and the Class.

90. When Lendmark applied Named Plaintiff and Class Members scheduled monthly payments toward previously assessed late fees rather than the scheduled principal and interest amount, Lendmark Financial materially breached its contracts with Named Plaintiff and the Class.

91. As a result of Lendmark Financial's breach of contract with Named Plaintiff and the Class, Named Plaintiff and the Class have been damaged.

92. Named Plaintiff and the Class have been deprived of the substantial rights granted to them by CLEC, § 14-1315 and under their contracts as set forth herein.

93. In addition, Named Plaintiff and the Class also sustained financial damages as a result of Lendmark Financial's failure to return all of the interest, costs, fees, insurance premiums and other charges collected on their loans, and Named Plaintiff and the Class sustained other damages and losses.

## COUNT THREE
### (MD. CODE ANN., COMM. LAW § 14-1315)

94. Named Plaintiff re-alleges and incorporates by reference the allegations herein, and further alleges:

95. Md. Code Ann., Comm. Law § 14-1315 was in effect at the time Named Plaintiff and all other Class Members' credit contracts were signed.

96. Section 14-1315 restricts creditors such as Lendmark Financial from charging to consumers late fees in amounts greater than those stated therein.

97. Section 14-1315 restricts creditors such as Lendmark Financial from charging to consumers late fees prior to the expiration of the grace period provided by the statute as stated therein.

98. Section 14-1315 requires creditors such as Lendmark Financial to disclose the amount of the late fee as provided by the statute as stated therein

99. Lendmark Financial charged and collected numerous late fees from Named Plaintiff and the Class in violation of § 14-1315 as stated in more detail herein.

100. Lendmark Financial failed to properly disclose the late fees in Named Plaintiff and each Class Member's credit contract as stated in more detail herein.

101. Any late fee charged in violation of § 14-1315 is interest, a finance charge, liquidated damages and a penalty.

102. Lendmark Financial charged numerous late fees to Named Plaintiff and the Class in violation of CLEC as stated in more detail herein.

103. Named Plaintiff and the Class have been damaged due to the assessment and collection of late fees as stated in more detail herein.

### COUNT FOUR
### (MARYLAND CONSUMER PROTECTION ACT)

104. Named Plaintiff re-alleges and incorporates by reference the allegations herein, and further alleges:

105. Maryland's Consumer Protection Act ("CPA"), Md. Code Ann., Comm. Law §§

13-101, *et seq.*, prohibits any "person" from engaging in any unfair or deceptive trade practices, *inter alia*, in the extension of consumer credit and in the collection of consumer debts. §§ 13-303(3) and (4).

106. As a "person" under the CPA, § 13-101(h), Lendmark Financial is prohibited from engaging in unfair and deceptive trade practices.

107. The CPA, § 13-301(1), specifically prohibits Lendmark Financial from making any false or misleading oral or written statement or other representation of any kind which has the capacity, tendency or effect of deceiving or misleading consumers.

108. The CPA, § 13-301(3), further prohibits Lendmark Financial from failing to state a material fact if the failure deceives or tends to deceive.

109. In violation of the CPA, §§ 13-303(3) - (4), § 13-301(1) and § 14-1315, Lendmark Financial told Named Plaintiff and the Class in writing that Lendmark Financial: (i) had the right to charge and/or assess Class Members late fees after a Class Member became five days late but assessed these charges prior to the time disclosed; (ii) had the right to charge and/or assess Class Members late fees after a Class Member became five days late on any payment even though the minimum number of days before which Lendmark Financial could actually charge a late fee was 15 days; (iii) had the right to charge and/or assess Class Members late fees in an amount greater than that permitted by law; and (iv) would direct any payment by Class Members to satisfy any scheduled monthly payment but in practice apply these payments first to past due late fees in an effort to churn and inflate late fees and interest.

110. These written statements were false and misleading and tended to and did deceive Named Plaintiff and the Class who made payments to Lendmark Financial which were not due and owing and which they would not have made had Lendmark Financial informed them of the

material facts.

111. In violation of the CPA, §§ 13-303(3) - (4) and § 13-301(3), Lendmark Financial failed to disclose to Named Plaintiff and the Class that: (i) each Class Member was entitled to a fifteen day grace period prior to any late fee being assessed to any Class Member account; (ii) the maximum late fee that could be charged to any Class Member was ten percent (10%) of the amount of the payment that was past due; and (iii) the timing and amount of the late fees in at least ten (10) point bold type.

112. This failure to disclose material facts tended to and did deceive Named Plaintiff and the Class who made payments to Lendmark Financial which were not due and which they would not have made had Lendmark Financial informed them of the material facts.

113. Lendmark Financial committed unfair and deceptive practices by collecting and attempting to collect on an alleged debts which, in fact, were not due and this conduct constitutes unfair and deceptive trade practices in violation of the CPA, §13-101, *et seq.*, including §§ 13-303(3) and (4), and §§ 13-301(1) and (3).

114. Lendmark Financials numerous violations of § 14-1315 are *per se* unfair and deceptive practices.

115. As a result of Lendmark Financial's unfair and deceptive trade practices in violation of the CPA, Named Plaintiff and the Class were induced to make payments to Lendmark Financial on interest charges, insurance premiums, late fees and debts, causing Named Plaintiff and the Class injury and loss.

## COUNT FIVE
## (NEGLIGENT MISREPRESENTATION)

116. Named Plaintiff re-alleges and incorporates by reference the allegations herein, and further alleges:

16

117. Lendmark Financial and its agents and employees negligently made the false and misleading representations and omissions alleged herein.

118. Lendmark Financial agents or employees negligently failed to disclose the material facts alleged herein.

119. Lendmark Financial's agents or employees negligently made and failed to disclose these material facts intending that Named Plaintiff and the Class would reasonably rely upon the false and misleading representations and omissions to their detriment.

120. Named Plaintiff and the Class reasonably relied upon the false and misleading representations and omissions to their detriment.

121. Named Plaintiff and the Class received no benefit from the assessment or payment of illegal late fees.

122. As a direct and proximate result of Lendmark Financial's negligent statements, representations, and omissions, Named Plaintiff and the Class were induced, *ab initio*, to make payments for late fees that were either not allowed by law or were greater than the amount allowed by law.

123. Lendmark Financial, their agents or employees, owed a duty of care to Named Plaintiff and the Class.

124. Lendmark Financial recklessly and negligently breached the duty of care they owed to Named Plaintiff and the Class by making negligent representations to Named Plaintiff and the Class and negligently concealing material facts from them, as set forth herein.

125. Lendmark Financial knew, or had reason to know, that Named Plaintiff and the Class would reasonably rely on the representations and concealments which if erroneous, would cause loss, injury or damage.

126. Named Plaintiff and the Class justifiably and reasonably took actions to their detriment as alleged herein, by paying Lendmark Financial for late fees that Lendmark Financial was not legally entitled to collect, in reliance on the negligent representations and concealments.

## PRAYER FOR RELIEF

WHEREFORE, Named Plaintiff respectfully prays that this Court:

A. Assume jurisdiction of this case;

B. Enter an order certifying the Class under Md. Rule 2-231(b)(2) and (b)(3);

C. Order that Lendmark Financial pay to Named Plaintiff and the Class the statutory penalties imposed by CLEC, § 12-1018;

D. Order that pursuant to CLEC, § 12-1018, Lendmark Financial can only collect the principal amount of the each loan;

E. Pursuant to CLEC, § 12-1018, enter judgment in favor of Named Plaintiff and the Class against Lendmark Financial in an amount of three times the interest, costs, fees, and other charges which Lendmark Financial collected in excess of that allowed by CLEC;

F. Order that Lendmark Financial repay all late fees collected from Named Plaintiff and the Class in violation of § 14-1315;

G. Award Named Plaintiff and members of the Class actual damages;

H. Award Named Plaintiff and members of the Class reasonable attorney's fees;

I. Award Named Plaintiff and members of the Class costs and expenses of the action;

J. Award Named Plaintiff and members of the Class compensatory damages as the evidence shall warrant;

K. Award Named Plaintiff and members of the Class punitive damages in such amount as a jury deems necessary to punish and deter Lendmark Financial and other lenders from engaging in like conduct;

L. Award pre-judgment and post-judgment interest on all sums awarded to Named Plaintiff and members of the Class; and

M. Award such other relief as the court deems appropriate.

Respectfully submitted,

Z LAW, LLC

Dated: May 6, 2013                    By: _____
Cory L. Zajdel, Esq.
10811 Red Run Blvd., Suite 204
Owings Mills, Maryland 21117
(443) 213-1977
clz@zlawmaryland.com

**Attorney for Named Plaintiff**

## JURY TRIAL

Named Plaintiff individually and all others similarly situated demands trial by jury on all issues so triable.

_____
Cory L. Zajdel