IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

<table>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>MICHELLE WILLIAMS,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>    Plaintiff,</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td></td></tr>
<tr><td>      v.</td><td></td><td></td></tr>
<tr><td></td><td>*</td><td>CIVIL NO.: WDQ-13-1740</td></tr>
<tr><td>LENDMARK FINANCIAL SERVICES,</td><td></td><td></td></tr>
<tr><td>INC.</td><td>*</td><td></td></tr>
<tr><td></td><td></td><td></td></tr>
<tr><td>    Defendant.</td><td>*</td><td></td></tr>
</table>

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Michelle Williams sued Lendmark Financial Services, Inc.

("Lendmark Financial"), individually and on behalf of all others

similarly situated,[1] in the Circuit Court for Baltimore City for

violations of the Maryland Credit Grantor Closed End Credit

---

[1] Williams brings this action "on behalf of a Class which
consists of: All persons who were charged a late fee by
Lendmark Financial in connection with a credit contract governed
by CLEC." ECF No. 2 ¶ 60. The proposed class consists of
Williams and "at a minimum, of several hundred (and likely
thousands) of persons." Id. ¶¶ 61-62. The proposed class
excludes:

> (a) those individuals who now are or have ever been
> executives of the Defendant and the spouses, parents,
> siblings, and children of all such individuals; (b)
> any individual against whom a judgment has been
> granted in favor of Lendmark Financial on the account
> at issue on or before the date of the filing of this
> Complaint; (c) any individual who was granted a
> discharge pursuant to the United States Bankruptcy
> Code or state receivership laws after the date of his
> or her Installment Contract.

ECF No. 2 ¶ 60.

Provisions ("CLEC"),[2] Maryland Consumer Protection Act ("MCPA"),[3] and other claims. Lendmark Financial removed the action. Pending are Lendmark Financial's motion to dismiss, or in the alternative motion for summary judgment, and Williams's motion to strike. For the following reasons, Lendmark Financial's motion to dismiss will be granted in part and denied in part. Williams's motion to strike will be denied.

I.  Background[4]

On November 17, 2009, Williams[5] obtained a personal loan from Lendmark Financial[6] in the principal amount of $2,620.72. ECF No. 13-2. The loan was documented in the "Combination

---

[2] Md. Code Ann., Com. Law §§ 12-1001 *et seq.*

[3] Md. Code Ann., Com. Law §§ 13-101 *et seq.*

[4] On a motion to dismiss for failure to state a claim, the well-pled allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). In reviewing the motion to dismiss, the Court may consider allegations in the complaint, matters of public record, and documents attached to the motion to dismiss that are integral to the complaint and authentic. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Accordingly, the Court will consider the Promissory Note attached to Lendmark Financial's motion to dismiss.

[5] Michelle Williams is a resident of Baltimore, Maryland. ECF No. 2 ¶ 16. Her name was Michelle Dargan when she signed the Promissory Note. *See* ECF No. 13-2.

[6] Lendmark Financial is a sub-prime lender that has issued more than 1,000 CLEC loans in Maryland annually since 2005 at interest rates as high as 24 percent. ECF No. 2 ¶¶ 2-6. Lendmark Financial is a Georgia corporation with its principal place of business in Covington, Georgia. *Id.* ¶ 19.

2

Statement of Transaction, Promissory Note & Security Agreement"
("Promissory Note"). ECF No. 2 ¶ 22. The Promissory Note
states that it is governed by the CLEC. ECF No. 13-2; ECF No. 2
¶ 23. The Promissory Note included credit life and disability
insurance, and a $100 "Loan Fee." ECF No. 13-2; ECF No. 2 ¶¶
24-25. The loan had an annual interest rate of 20.24 percent.
ECF No. 13-2; ECF No. 2 ¶¶ 27-28. Williams was scheduled to
make 36 monthly payments of $102.23 with the final payment to be
made on December 1, 2012. ECF No. 13-2; ECF No. 2 ¶¶ 29-30.
The total payment on the loan was disclosed as $3,680.28. ECF
No. 13-2; ECF No. 2 ¶ 31. Williams "entered into the Promissory
Note primarily for personal, family and household purposes."
ECF No. 2 ¶ 26. As of April 23, 2013, Lendmark Financial had
collected $3,901.94 in total payments from Williams, and claimed
a balance of $850.38 owed on the loan. *Id.* ¶¶ 33-34.

The Promissory Note requires Williams to make monthly
payments on the first day of each month. ECF No. 13-2. The
Promissory Note also provides that "[i]f I do not pay any
installment within 5 days after its scheduled or deferred due
date, I agree to pay a late charge of the greater of 10% of the
unpaid amount of the installment or $25.00." ECF No. 13-2; ECF
No. 2 ¶ 45. Lendmark Financial assessed late fees to Williams
and class members "prior to the expiration of her 5 day grace
period after missing a scheduled or deferred payment." ECF No.

3

2 ¶ 47.  The late fee language of the Promissory Note was not
disclosed in at least 10-point bold type, and Lendmark Financial
assessed late fees in amounts greater than 10% of the unpaid
installment amount.  *Id.* ¶¶ 46, 49.  The Promissory Note states
that "all payments by me shall be applied to scheduled payments
in the order they become due."  ECF No. 13-2; ECF No. 2 ¶ 55.
The agreement also provides that Williams's payments would be
applied "first to late charges, then to accrued interest and
then to the principal."  See ECF No. 13-2.  Lendmark Financial's
"routine practice" is to apply payments to past due late fees
first.  *Id.* ¶ 56.

    B.   Procedural History

    On May 9, 2013, Williams sued Lendmark Financial in Circuit
Court of Baltimore City, Maryland.  *See* ECF Nos. 1, 2.[7]  On June
14, 2013, Lendmark Financial removed the action to this Court
under the Class Action Fairness Act of 2005 ("CAFA").[8]  *See* ECF
No. 1.  On June 28, 2013, Lendmark Financial moved to dismiss

---

[7] In the complaint, Williams asserts five claims against Lendmark
Financial:

- Violations of the CLEC (Count I);
- Breach of Contract (Count II);
- Violations of CL § 14-1315 (Count III);
- Violations of the MCPA (Count IV); and
- Negligent Misrepresentation (Count V).

ECF No. 2 ¶¶ 73-126.

[8] *See* 28 U.S.C. § 1332(d).

for failure to state a claim, or in the alternative, for summary judgment. ECF No. 13. On July 3, 2013, Williams moved to strike portions of Lendmark Financial's motion. *See* ECF No. 14. On July 17, 2013, Lendmark Financial opposed William's motion to strike. ECF No. 15. On July 26, 2013, Williams opposed Lendmark Financial's motion. ECF No. 16. On August 2, 2013, Williams replied. ECF No. 19. On August 23, 2013, Lendmark Financial replied. ECF No. 20.

II.  Analysis

A.  Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,

764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability;'" the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not shown--that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

    B.    Lendmark Financial's Motion

        1.    Violation of CL § 14-1315 (Count III)

Williams alleges that Lendmark Financial violated Md. Code Ann., Com. Law § 14-1315 ("CL § 14-1315"). *See* ECF No. 2 ¶¶ 94-103. Lendmark Financial argues that CL § 14-1315 does not apply to the late fees imposed because they are otherwise allowed under CLEC, and alternatively, that the Promissory Note is not a consumer contract subject to CL § 14-1315. *See* ECF No. 13-1 at 17-22.

CL § 14-1315 was the legislative response to the Maryland Court of Appeals' decision in *United Cable Television of Baltimore Ltd. P'ship v. Burch*, 354 Md. 658 (Md. 1999). *See Dua v. Comcast Cable of Md., Inc.*, 370 Md. 604, 613 (Md. 2002). In *Burch*, the Court held that a cable provider was entitled to charge a late fee only at the 6 percent per annum interest rate allowed under the Maryland Constitution, unless otherwise provided by the General Assembly. *See Burch*, 354 Md. at 675; *Dua*, 370 Md. at 612-13. The Court in *Burch* found that, because no statute authorized the cable company's late charges, the late fees were considered interest under common law and subject to the Maryland Constitution's 6 percent limit. *See Burch*, 354 Md. at 675-81.

CL § 14-1315 authorizes the imposition of late fees on consumer contracts and provides limitations on the amount, disclosure, and timing of those fees. *See* CL § 14-1315. The statute provides that:

> A late fee included in a consumer contract pursuant to this section is subject to one of the following limitations:
> (i) 1. The amount of the late fee may be up to $5 per month, or up to 10% per month of the payment amount that is past due, whichever is greater; and
> 2. No more than 3 monthly late fees may be imposed for any single payment amount that is past due, regardless of the period during which the payment remains past due; or
> (ii) The amount of the late fee may be up to 1.5% per month of the payment amount that is past due.

CL § 14-1315(f)(1). The statute also requires that any late fee under (f)(1) must be disclosed "in size equal to at least 10-point bold type." CL § 14-1315(f)(2). The statute provides for a 15-day grace period, stating that "a late fee included in a consumer contract pursuant to this section may not be imposed until 15 days after the date the bill was rendered for the goods or services provided." CL § 14-1315(f)(3)(i). CL § 14-1315 also states that "[t]his section does not affect a late fee, a finance charge, interest, or any other fee or charge otherwise allowed under applicable law." CL § 14-1315(e). The statute defines a "Consumer contract" as "a contract involving the sale, lease, or provision of goods or services which are for personal, family, or household purposes." CL § 14-1315(a)(2).

Lendmark Financial argues that CL § 14-1315 does not apply to the late fees in this case because they are "otherwise allowed under applicable law" pursuant to the CLEC. *See* ECF No. 20 at 5-6. For a loan to a consumer borrower, the CLEC authorizes a credit grantor to charge a late fee if "the agreement, note, or other evidence of the loan permits." Md. Code Ann., Comm. Law § 12-1008(b). The CLEC requires that "[n]o more than 1 late or delinquency charge may be imposed for any single payment or portion of payment, regardless of the period during which it remains in default." *Id.* The CLEC also

provides that "all payments by the borrower shall be applied to satisfaction of scheduled payments in the order in which they become due." Md. Code Ann., Comm. Law § 12-1008(c). The CLEC does not impose limitations on the amount of late fees. *See* Md. Code Ann., Comm. Law § 12-1008.

"[A]ll statutory interpretation questions . . . must begin with the plain language of the statute." *Negusie v. Holder*, 555 U.S. 511, 542 (2009). In construing a statute, the Court "interpret[s] the words in their context and with a view to their place in the overall statutory scheme." *Tyler v. Cain*, 533 U.S. 656, 662 (2001) (internal quotation marks omitted). "[A]bsent ambiguity or a clearly expressed legislative intent to the contrary," courts should give a statute its "plain meaning." *United States v. Bell*, 5 F.3d 64, 68 (4th Cir. 1993).

Lendmark Financial's interpretation is consistent with the plain language of the statute. CL § 14-1315 states that it "does not affect a late fee, a finance charge, interest, or any other fee or charge otherwise allowed under applicable law." *See* CL § 14-1315(e). The CLEC authorizes a creditor to charge late fees on a note as long as the fees are provided for in the agreement, as Lendmark Financial did here. *See* Md. Code Ann., Comm. Law § 12-1008(b). Additionally, the provision of CL § 14-1315 that limits the amount and timing of late fees begins by stating that "[a] late fee included in a consumer contract

*pursuant to this section* is subject to one of the following limitations." *See* CL § 14-1315(f)(1) (emphasis added). Because the late fees imposed by Lendmark Financial are included pursuant to the CLEC, the plain language of CL § 14-1315 does not limit those fees.

The Maryland Court of Appeals briefly discussed CL § 14-1315 in *McDaniel v. Am. Honda Fin. Corp.*, 400 Md. 75 (Md. 2007), which both parties discuss at length. *See* ECF No. 20 at 6-9; ECF No. 16 at 16, 18-20. In *McDaniel*, the Court addressed whether a late fee charged by the lessor of a motor vehicle was interest, and whether the rate of interest was lawful. *See McDaniel*, 400 Md. at 77-78. The Court concluded that the late fees were not interest. *See id.* at 87-88. The Court noted that the General Assembly authorized late fees for consumer motor vehicle leasing contracts by enacting the Maryland Motor Vehicle Leasing Act ("MMVLA").[9] *See id.* at 84-85. The Court determined that the late charges did not constitute interest based on the plain reading of the statute and the intent of the General Assembly in authorizing the late charges. *See id.* at 85-86.

Accordingly, the Court held that under CL § 14-2002(g)(1)(i), late fees incurred before June 1, 2000 and after January 1, 1996 were not interest, and therefore not subject to

---

[9] Md. Code Ann., Com. Law §§ 14-2001, *et seq*; Md. Code Ann., Comm. Law § 14-2002(g)(1)(i).

10

the Maryland Constitution's interest rate limit. *Id.* at 87. The Court further held that:

> As for any late fees that may have been assessed after 1 June 2000, we hold that the controlling statute is Commercial Law § 14-1315(d)(1), which was enacted by the General Assembly in response to *Burch I* specifically to clarify that '[a] late fee imposed under [a consumer contract] is not . . . [i]nterest.' There is no question that the motor vehicle leases executed by Appellants fall within the bounds of § 14-1315. The statute plainly covers 'consumer contracts,' which entail 'the . . . lease . . . of goods . . . which are for personal, family, or household purposes.'

*See McDaniel*, 400 Md. at 87-88 (internal citations omitted). Because a car lease is "undoubtedly the type of contract for a personal or family good contemplated by the statute," the Court determined that the late fees were not interest under CL § 14-1315. *Id.* at 88-89. Thus, "any late fees charged by American Honda after 1 June 2000 are governed properly by the terms of the contracts American Honda executed with its leases." *Id.* at 89. The Court noted that § 14-1315 did not change the substance of the car leases. *McDaniel*, 400 Md. 89.

Williams argues that the Court's decision in *McDaniel* forecloses Lendmark Financial's interpretation of the statute. *See* ECF No. 16 at 20. Williams contends that because the Court held that CL § 14-1315(d)(1) was "the controlling statute" for late fees assessed after June 1, 2000, the limitations of CL § 14-1315 apply to all consumer contracts. *See* ECF No. 16 at 19;

11

*McDaniel*, 400 Md. at 87. However, the Court's holding in *McDaniel* is not dispositive of the issue in this case. The Court in *McDaniel* did not address the application of CL § 14-1315's limitations to previously authorized late fees on consumer contracts. Although the late fees for vehicle leases charged in *McDaniel* were previously authorized by the MMVLA, the Court only discussed CL § 14-1315 as support for its determination that the fees were not interest. *See McDaniel*, 400 Md. at 87-89. Had the Court determined that CL § 14-1315's limitations were applicable, the fees at issue in *McDaniel* would have violated those limitations. *See McDaniel*, 400 Md. at 78-79 (the leases allowed for a late fee to be imposed 10 days after payment was due); CL § 14-1315(f)(3)(i) (prohibits late fees imposed before 15 days after the bill was rendered). Instead, the Court held that the late fees were "governed properly by the terms of the contracts American Honda executed with its leases," and affirmed the dismissal of the case based on its holding that the fees were not interest. *See McDaniel*, 400 Md. at 89, 77. Additionally, the Court found that the passage of CL § 14-1315 did not alter the substance of the car leases. *McDaniel*, 400 Md. at 89.

Even assuming that CL § 14-1315 applied to late fees previously authorized by the CLEC, the limitations would not apply here because the Promissory Note between Lendmark

12

Financial and Williams is not a "consumer contract" under CL § 14-1315. A "[c]onsumer contract" under CL § 14-1315 is "a contract involving the sale, lease, or provision of goods or services which are for personal, family, or household purposes." CL § 14-1315(a)(2). Williams argues that, because Lendmark Financial sold her credit life and credit disability insurance, and charged a $100 refinancing fee, the Promissory Note is a consumer contract involving "the sale and provision of services." *See* ECF No. 16 at 22.

The Promissory Note included charges for credit life and disability insurance, and a $100 "Loan Fee." *See* ECF No. 13-2 at 1. CL § 14-1301 defines "service" as used "[i]n this subtitle" as any "(1) Building repair or improvement service; (2) Subprofessional service; (3) Repair of a motor vehicle, home appliance, or other similar commodity; and (4) Repair, installation, or other servicing of any plumbing, heating, electrical, or mechanical device." Md. Code Ann., Com. Law § 14-1301(e). Although the subtitle including CL § 14-1315 does not define "goods," the definitions used elsewhere in the Maryland Commercial Law Article are instructive. For example, "Goods" are defined under Md. Code Ann., Com. Law § 2-105(1) as "all things (including specially manufactured goods) which are movable at the time of identification of the contract for sale other than the money in which the price is to be paid,

13

investment securities (Title 8) and things in action."[10]  Credit
life and disability insurance are not "goods" or "services"
under any of these definitions.

Additionally, the inclusion of the "Loan Fee" does not make
the Promissory Note a consumer contract as defined by CL § 14-
1315.  The Promissory Note states that the $100 "Loan Fee" was
"an agreed upon refinancing charge."  *See* ECF No. 13-2 at 1.
Under the CLEC, a creditor "may charge and collect a refinancing
charge in connection with any refinancing."  Md. Code Ann., Com.
Law § 12-1010(a).  Although Williams argues in her opposition
that Lendmark Financial also provided settlement services in
exchange for the Loan Fee, this allegation is not found in her
complaint.  *See* ECF No. 16 at 22.  Because the Promissory Note
does not "involve[e] the sale, lease, or provision of goods or
services which are for personal, family, or household purposes,"
it is not a consumer contract under CL § 14-1315.[11]  Accordingly,
the limitations imposed by CL § 14-1315 are inapplicable to the

---

[10] Md. Code Ann., Com. Law § 9-102(44) defines "Goods" as "all
things that are movable when a security interest attaches,"
including "(i) fixtures, (ii) standing timber that is to be cut
and removed under a conveyance or contract for sale, (iii) the
unborn young of animals, (iv) crops grown, growing, or to be
grown, even if the crops are produced on trees, vines, or
bushes, and (v) manufactured homes."  Md. Code Ann., Com. Law §
7-102(a)(7) and § 18-101(d) define "Goods" as all things which
are "treated as movable for the purposes of a contract for
storage or transportation."

[11] *See* CL § 14-1315(a)(2).

contract between Lendmark Financial and Williams. Lendmark
Financial's motion to dismiss Count III will be granted.

    2.   CLEC Claim (Count I)

Williams argues that Lendmark Financial violated the CLEC
by (1) violating CL § 14-1315, (2) applying Williams's payments
to late fees first rather than to monthly payments, and (3)
assessing late fees before the five-day grace period required by
the Promissory Note. *See* ECF No. 16 at 25-27. As discussed
above, *supra* Part II.B.1., CL § 14-1315's limitations on late
fees do not apply to the Promissory Note in this case.
Accordingly, Williams's first argument supporting her CLEC claim
fails.

The CLEC authorizes a credit grantor to charge a late fee
if "the agreement, note, or other evidence of the loan permits."
Md. Code Ann., Comm. Law § 12-1008(b). With respect to the
application of payments, the CLEC provides that "all payments by
the borrower shall be applied to satisfaction of scheduled
payments in the order in which they become due." Md. Code Ann.,
Comm. Law § 12-1008(c). The Promissory Note states that "all
payments by me shall be applied to scheduled payments in the
order they become due." ECF No. 13-2; ECF No. 2 ¶ 55. The
Promissory Note also provides that Williams's payments would be
applied "first to late charges, then to accrued interest and
then to the principal." *See* ECF No. 13-2; ECF No. 20 at 19.

Williams argues that "scheduled payment" under the CLEC refers to "the specific sum of money that the consumer agreed to repay on a specific date of each month that if undertaken under the agreed terms would satisfy all interest and principal of the loan upon final payment." *See* ECF No. 16 at 28. Williams contends that Lendmark Financial violated the CLEC by applying payments first to late fees, rather than the "scheduled payments" of the principal and interest. *See* ECF No. 16 at 29.

The CLEC does not define the term "scheduled payments." However, Williams's interpretation of the term is not consistent with the statute. The relevant provision of the CLEC states:

> (b) In the case of a loan to a consumer borrower, no late or delinquency charge may be charged unless the agreement, note, or other evidence of the loan permits. No more than 1 late or delinquency charge may be imposed for any single payment or portion of payment, regardless of the period during which it remains in default.

> (c) For the purposes of subsection (b) of this section, *all payments by the borrower shall be applied to the satisfaction of scheduled payments in the order in which they become due.*

Md. Code Ann., Com. Law § 12-1008(b), (c) (emphasis added). Subsection (c) references the subsection above requiring a note or agreement to authorize a late charge for a consumer borrower. Under Williams's definition of "scheduled payments," a creditor grantor would apply any payments made by a borrower to the fixed monthly principal and interest due, and that payment would be

16

considered complete regardless of whether the borrower had previously incurred an additional late fee. Accordingly, a borrower would be required to pay any accrued late fees only after she had completed her payments of the entire principal and interest. If "scheduled payments" means the payments due at a particular time, a borrower's payments are to be applied first to any authorized late fee assessed for a previously late payment. Accordingly, Williams has not stated a claim for a violation of CLEC by alleging that Lendmark Financial applied her payments to "late fees rather than the scheduled monthly payment of principal and interest." *See* ECF No. 2 ¶ 79.

Williams also argues that Lendmark Financial violated the CLEC by assessing late fees before the contractual grace period. *See* ECF No. 16 at 27. The Promissory Note provides that "[i]f I do not pay any installment within 5 days after its scheduled or deferred due date, I agree to pay a late charge of the greater of 10% of the unpaid amount of the installment or $25.00." *See* ECF No. 13-2; ECF No. 2 ¶ 45. In her complaint, Williams alleges that Lendmark Financial "assessed late fees . . . prior to the expiration of her 5 day grace period after missing a scheduled or deferred payment." ECF No. 2 ¶ 47. Because assessing late fees before the five-day grace period would violate the late fee provisions of the Promissory Note, Williams has stated a claim for a violation of the CLEC. *See* Md. Code

Ann., Com. Law § 12-1008(b).[12] Accordingly, Lendmark Financial's motion to dismiss Count I will be denied.

### 3.   Breach of Contract Claim (Count II)

Williams argues the Lendmark Financial breached the Promissory Note by violating the CLEC. *See* ECF No. 16 at 31-32. As discussed above, *supra* Part II.B.2., Williams has stated a claim for a violation of the CLEC. Accordingly, Lendmark Financial's motion to dismiss Williams's claim for breach of contract also will be denied.

### 4.   MCPA Claim (Count IV)

Williams alleges that Lendmark Financial violated the MCPA by failing to disclose in the contract the consumer protections provided under CL § 14-1315. *See* ECF No. 16 at 32-33. However, as discussed above, *supra* Part II.B.1., the limitations of CL § 14-1315 do not apply to the Promissory Note between Williams and Lendmark. Accordingly, Lendmark Financial's motion to dismiss Williams's MCPA claim will be granted.

---

[12] Lendmark Financial argues that the account statement attached to its motion to dismiss contradicts Williams's allegations and should be considered. *See* ECF No. 20 at 18-19. However, even if the Court were to consider the attached account statement, it is not clear evidence that Lendmark Financial properly assessed late fees, because the statement does not include the amount Lendmark Financial considered the "scheduled payment" due each month. *See* ECF No. 13-4.

5. Negligent Representation Claim (Count V)

Williams alleges that Lendmark Financial made "false and misleading representations" and "negligently failed to disclose the material facts." ECF No. 2 ¶¶ 117-18. To state a claim for negligent misrepresentation, a plaintiff must allege:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury, (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence.

*Lloyd v. General Motors Corp.*, 397 Md. 109, 135-36 (Md. 2007). Here, Williams does not identify any false statement made by Lendmark Financial. *See* ECF No. 2 ¶¶ 116-26. To the extent Williams argues that Lendmark Financial asserted false statements by including late fee provisions in the Promissory Note that would violate CL § 14-1315, as discussed above, *supra* Part II.B.1, those limitations do not apply. Williams's conclusionary statements and recital of the elements of negligent misrepresentation are not sufficient to state a claim. *See Iqbal*, 556 U.S. at 678. Lendmark Financial's motion to dismiss Count V will be granted.

C.    Williams's Motion to Strike

Williams argues that the informal opinion letter written by Maryland Assistant Attorney General Kathryn Rowe attached to Lendmark Financial's motion should be struck from the record, along with any instance it is cited or used in argument. *See* ECF No. 14 at 4.  Williams argues that Rowe's letter should be struck because it was not relied on in the complaint, it is not admissible evidence, and it has no precedential value. *See* ECF No. 14 at 3-4.

The Court has inherent authority to strike documents from the record. *See Iota Xi Chapter of Sigma Chi Fraternity v. Patterson*, 566 F.3d 138, 150 (4th Cir. 2009).  "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

At issue is an informal opinion letter written by Kathryn Rowe, an Assistant Attorney General, in response to a question from the Maryland Bankers Association. *See* ECF No. 13-5 ("Rowe Letter").  In the August 14, 2000 letter, Rowe concludes that the "late fee bill"[13] does not apply to the late charges imposed by banks and other lenders under previously existing statutory authority. *See* Rowe Letter at 1.  Lendmark Financial is not

---

[13] Codified as CL § 14-1315.

offering the Rowe Letter as evidence. *See* ECF No. 15 at 4.
Instead, Lendmark Financial offers the Rowe Letter as
"authority" for its legal argument, with the intention that it
be "instructive or helpful" in the Court's consideration of the
motion. See ECF No. 15 at 4.

Maryland courts have noted that an informal advice letter
by an Assistant Attorney General "has no significance of its
own." *State Ethics Comm'n v. Evans*, 382 Md. 370, 384 n.4 (Md.
2004); *see also Doe v. Roe*, 419 Md. 687, 697 n.8 (Md. 2011);
*Public Service Comm'n of Md. v. Wilson*, 389 Md. 27, 57 n.18 (Md.
2005). The Court did not consider the Rowe Letter as
significant or persuasive authority in considering Lendmark
Financial's motion to dismiss. However, the letter's lack of
precedential value or significance as legal authority does not
provide a basis for striking it from the record. Williams has
offered no practical purpose for the Court to exercise its
inherent authority to strike the Rowe Letter. Accordingly, the
Court will deny Williams's motion to strike.[14]

---

[14] To the extent that Williams moves to strike the Rowe Letter
under Fed. R. Civ. P. 12(f), her motion also fails. Motions to
strike under Rule 12(f) apply only to pleadings, and Lendmark
Financial's motion is not a pleading. *See* Fed R. Civ. P. 12(f),
7(a).

III. Conclusion

For the reasons stated above, Williams's motion to strike will be denied. Lendmark Financial's motion to dismiss will be granted in part and denied in part.

3/24/14

Date

William D. Quarles, Jr.
United States District Judge