**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

MICHELLE WILLIAMS f/k/a       \*
MICHELLE DARGAN, individually and   \*
and as class representative for all others   \*
similarly situated,                   \*
                                  \*
            Plaintiff,          \*
                                  \*      Civil Action No. 1:13-cv-01740-WDQ
v.                                 \*
                                  \*
LENDMARK FINANCIAL SERVICES, INC.,   \*
                                  \*
           Defendant.       \*
                                  \*

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OF LAW IN SUPPORT OF**
**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Defendant Lendmark Financial Services, Inc. n/k/a Lendmark Financial Services, LLC ("Lendmark") submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**I.**         **PROCEDURAL HISTORY AND INTRODUCTION**

Between the origination of her loan with Lendmark on November 17, 2009 and the filing of this action three and one-half years later, Plaintiff failed to make more than thirty (30) timely and complete payments due under her promissory note. Each month that Plaintiff failed to make a complete payment "within 5 days after its scheduled or deferred due date," Plaintiff agreed to pay a late charge. Notwithstanding her delinquent payment history and the agreement to pay late charges, Plaintiff filed this putative class action lawsuit claiming that Lendmark's collection of late charges violated the law and breached the terms of her promissory note. This Court granted Lendmark's motion to dismiss in

part[1] (ECF Nos. 24, 25), and Lendmark now moves for summary judgment as to the only claims remaining, namely those based on the allegation that Lendmark "assessed late fees . . . prior to the expiration of [Plaintiff's] 5 day grace period after missing a scheduled or deferred payment."  ECF No. 2, Complaint, ¶ 47; *see* ECF No. 24, Memorandum Opinion at 17.

Regardless of when Lendmark accounted for the late charges internally, it is undisputed that Plaintiff *never* paid a late charge within the five-day grace period in which she had to make her payment.  *See* Section II.D, *infra*.  The promissory note signed by Plaintiff provides "[i]f I do not pay any installment within 5 days after its scheduled or deferred due date, I agree to pay a late charge of the greater of 10% of the unpaid amount or $25.00."  A comprehensive review of Plaintiff's payment history shows that each month Plaintiff's payment was delinquent or incomplete or both and she paid a late charge, the late charge was paid ***after*** the expiration of the five-day grace period.  As a result, Plaintiff's payment and Lendmark's collection of late charges are entirely consistent with the terms of the promissory note and do not violate CLEC, which authorizes the collection of late charges where the "agreement, note or other evidence of the loan permits."  CL § 12-1008(b).  Accordingly, there being no dispute that Plaintiff's promissory note permits late charges and that Plaintiff paid such charges consistent with the terms of her agreement, Lendmark is entitled to the entry of judgment as a matter of law on the remaining claims for violation of CLEC and breach of contract.

---

[1] Plaintiff initially asserted five causes of action against Lendmark including claims for violations of Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), Md. Code. Ann., Com. Law ("CL") §§ 12-1001, *et seq*., and a statutory default late fee provision, CL § 14-1315, and the Maryland Consumer Protection Act ("MCPA"), CL §§ 13-301, *et seq*., and for breach of contract and negligent misrepresentation.  ECF No. 2, Complaint.  In its Memorandum Opinion dated March 25, 2013, this Court dismissed the claims for violations of CL § 14-1315 and the MCPA and for negligent misrepresentation.  ECF No. 24, Memorandum Opinion at 14-15, 18, 19.  The Court also dismissed Plaintiff's claims under CLEC and for breach of contract to the extent those claims were based on either CL § 14-1315's limitations on late fees or the application of Plaintiff's payments.  *Id.* at 15-18.

## II.   STATEMENT OF UNDISPUTED MATERIAL FACTS

**A.   Plaintiff's Promissory Note.**

Plaintiff obtained a personal loan from Lendmark in the principal amount of $2,620.72, and in connection with the loan, executed a Combination Statement of Transaction, Promissory Note & Security Agreement ("Promissory Note") in favor of Lendmark dated November 17, 2009.  Declaration of Patsy Jones ("Jones Decl."), Exhibit 1 (Combination Statement of Transaction, Promissory Note & Security Agreement).  The Promissory Note contains an election stating that the extension of credit was made under Subtitle 10 of Title 12 of the Commercial Loan Article of the Annotated Code of Maryland (*i.e.*, CLEC).  Ex. 1, Promissory Note at 2 (Lendmark elects "to extend the loan evidenced by this note under Subtitle 10 of Title 12 of the Commercial Law Article of the Maryland Annotated Code."); *see also* CL § 12-1013(b).

According to the terms of the Promissory Note, Plaintiff agreed to make monthly payments in the amount of $102.23 beginning on January 1, 2010 and "then on the same date of each following month until [the loan is] fully paid."  Ex. 1, Promissory Note at 1 (PROMISE TO PAY).  The Promissory Note afforded Plaintiff an additional five days to make her payment without incurring a late charge:

> **LATE CHARGE**: If I do not pay any installment within 5 days after its scheduled or deferred due date, I agree to pay a late charge of the greater of 10% of the unpaid amount or $25.00.  Only one late charge shall be charged on any installment or part of an installment.  For purposes of computing late charges, all payments by [Plaintiff] shall be applied to scheduled payments in the order they become due.

Ex. 1, Promissory Note at 1 (LATE CHARGE).  If payment is received after the five-day grace period and, therefore, a late charge is due, the Promissory Note specifically states that such payment "will be

3

applied first to late charges, then to accrued interest and then to the principal."  Ex. 1, Promissory Note at 1 (PROMISE TO PAY).

Since the origination of the Promissory Note, Lendmark has mailed to Plaintiff a monthly statement that contains the date on which Plaintiff's next payment is due and the total amount owed for the month in the aggregate and broken down according to (i) the amount of the regular payment owed; (ii) the balance owed from any prior payment; (iii) the amount of any late fees or delinquency charges due; and (iv) other charges.  Jones Decl., ¶ 5.  The monthly statement also contains a transaction history for the prior month, reflecting payments received and charges assessed against the account.  *Id.* Lendmark prepares all monthly statements eighteen (18) days before the borrower's next payment is due and mails the statement to the borrower's last known address within twenty-four hours after creating the statement.  *Id.*[2]

**B.     Payment Options.**

Lendmark offered three payment methods to Plaintiff, as it does to all of its customers.  Jones Decl., ¶ 6.  *First*, Plaintiff could make her monthly payment at *any* Lendmark branch office (as opposed to the specific branch office identified in the Promissory Note).  *Id.*  All Lendmark branch offices in Maryland maintain the same minimum hours of operation.  They all open no later than 8:30 a.m. and close no earlier than 5:30 p.m. Monday through Friday.  Lendmark's branch offices may open earlier or stay open later and be open for some period of time on Saturdays at the discretion of branch management.  *Id.*  Lendmark is not open on Sundays.  *Id.*  *Second*, Plaintiff could make her monthly payment by calling Lendmark during the time that a Lendmark employee is physically present at a

---

[2] These monthly statements are not to be confused with Plaintiff's "Account Statement" which is an internal, computer generated document used by Lendmark for bookkeeping purposes.  Jones Decl., ¶ 3.  Although the Account Statement, attached here as Exhibit 2, would be available to Plaintiff upon request, it is not a document regularly sent to Plaintiff nor is it a document that Plaintiff can access on her own.  *Id.*

Lendmark business location.  *Id*.  *Third*, Plaintiff could make her monthly payment by mail.  *Id.*   There is no mechanism or means by which a borrower can make a payment after Lendmark's scheduled close of business.  *Id*.  Lendmark does not have lockboxes to collect payments nor does Lendmark provide on-line payment services.  *Id*.  Regardless of the payment method selected by Plaintiff, the payment had to be made before the close of business on the final business day of the grace period to avoid paying a late charge.  Ex. 1, Promissory Note (LATE CHARGE) and Jones Decl., ¶ 6.

According to her payment history, Plaintiff mailed all but one of her payments to Lendmark at its branch office located at 7620 Bel Air Road in Baltimore, Maryland.  Jones Decl., ¶¶ 3, 7, and Exhibit 2 (Account Statement).  The only payment that was not mailed was hand-delivered to Lendmark at the same address.  *Id.*

**C.  Lendmark's Internal Bookkeeping System.**

In administering its customers' accounts, Lendmark utilizes an automated program known as the Gold Points System ("GPS").  Jones Decl., ¶ 8.  The program provides a centralized means of marshalling and recording customers' account information.  *Id*.  GPS is a real time system.  *Id.* Payments are reflected immediately upon receipt and entry by Lendmark.  *Id*.  This is true regardless of the payment method used, *i.e.*, in person, by phone or by mail.  *Id*.  The GPS system is programmed to run after the close of business on each regularly scheduled business day.  *Id*.  In the event a borrower's payment is not received before the close of business on the last day of the applicable grace period, GPS assesses a late fee on the account.  *Id*.[3]

---

[3] There is one notable exception.  In the event the final day of the grace period falls on a Saturday, Sunday or holiday, the grace period is automatically extended and GPS does not assess a late fee unless payment is not received by close of business on the next regular business day.  Jones Decl., ¶ 8.

As reflected on Plaintiff's Account Statement, the GPS system marked Plaintiff's account with late charges somewhere between 8:45 pm and 10:30 pm on the fifth day after payment was due when it was no longer possible for a payment to be made by Plaintiff or received by Lendmark.  Jones Decl., ¶ 9, and Ex. 2, Account Statement.  Thus, in each instance, the next possible date on which payment could have been made was the following business day, which would have been outside of the five-day grace period agreed to in Plaintiff's Promissory Note.  *Id.*

**D.    Plaintiff's Payment History.**

Plaintiff's first payment on the Promissory Note was due on January 1, 2010.  Ex. 1, Promissory Note.  Plaintiff made that payment and the next two months' payments within the five-day grace period.[4] Ex. 2, Account Statement.  All three payments were in the amount of $106.00.  *Id.*  Because Plaintiff's payments for January, February, and March 2010 were in an amount greater than the monthly payment amount of $102.23, Ms. Dargan had prepaid her loan by the end of March 2010 in the amount of $11.31. Jones Decl., ¶ 10.

In April 2010, Plaintiff defaulted on her repayment obligations.  Ex. 2, Account Statement; Ex. 1, Promissory Note at 1 ("**DEFAULT**: I will be in default, if (1) I do not make a payment on time. . . .").  Plaintiff's payment was due on April 1, 2010, but Plaintiff did not make a payment on that date nor did she make a payment prior to the expiration of the five-day grace period on April 6, 2010.  Ex. 2,

---

[4]  On the first three installment payments, Plaintiff took advantage of the grace period and did not make her payment until the fifth day after the date payment was due.  Ex. 2, Account Statement (January 6, 2010 [January 1st was a legal holiday], February 5, 2010, and March 5, 2010).  These payments were made prior to the close of business on the fifth day after payment was due.  *Id.*

Account Statement.  As a result, Ms. Dargan owed a late fee in the amount of $25.00 which, when added to the monthly payment amount of $102.23 and taking into consideration the $11.31 that was prepaid, resulted in $115.92 being due.[5]  Jones Decl., ¶ 11.  Plaintiff paid only $106.00 (on April 7, 2010), leaving a balance due of $9.92.  *Id.* and Ex. 2, Account Statement.

The next payment Plaintiff made was on May 5, 2010, but instead of paying the amount due of $112.15 (the $9.92 balance owed from April + the monthly payment amount of $102.23), Plaintiff paid $106.00.  Jones Decl., ¶ 12, and Ex. 2, Account Statement.  Consistent with the terms of the Promissory Note, which require "all payments . . . [to] be applied to scheduled payments in the order they become due," (Ex. 1, Promissory Note at 1 (LATE CHARGE)), Plaintiff's payment was first applied to satisfy the $9.92 balance owed from April 2010 and then was applied to the monthly payment due May 1, 2010.  Jones Decl., ¶ 11.  This resulted in Plaintiff still owing $6.15 for May 2010 (payment of $106.00 - $9.92 due from April - $102.23 monthly payment = ($6.15)).  *Id.*

Plaintiff's next payment was made on June 4, 2010, and although the payment was made within the five-day grace period, it did not take into consideration the balance that remained due from May 2010.  Ex. 2, Account Statement.  Lendmark applied Plaintiff's payment of $106.00 first to satisfy the $6.15 balance due from May as required by the Promissory Note and then to the monthly June payment of $102.23.  Jones Decl., ¶ 13.  This resulted in another short pay of $2.38 (payment of $106.00 - $6.15 due from May - $102.23 monthly payment = ($2.38)).  *Id.*

---

[5] Pursuant to the terms of the Promissory Note, Plaintiff agreed to pay "a late charge of the greater of 10% of the unpaid amount or $25.00."  Ex. 1, Promissory Note.  The unpaid amount due as of April 1, 2010 was $102.23, and since $25 is greater than 10% of $102.23, $25.00 was the amount of the late charge.  However, effective May 2013, Lendmark made a business decision to reduce the amount of a late charge for all Maryland credit contracts to 10% of the monthly payment amount up to a maximum of $25.00.  This reduction in the amount of the late charge is reflected in the Account Statement attached as Exhibit 2.

7

For the payment due July 1, 2010, Plaintiff did not pay on time nor did she pay within the five-day grace period.  Ex. 2, Account Statement.  In fact, Plaintiff did not make a payment until July 12, 2010 and, consequently, incurred another $25.00 late charge.  *Id.*  However, because Plaintiff still owed a balance on the payment due June 1, 2010, Lendmark – following the terms in Plaintiff's Promissory Note – applied Plaintiff's payment of $106.00 first to the $2.38 balance owed from the prior month and then "to late charges, then to accrued interest and then to the principal."  Ex. 1, Promissory Note, and Jones Decl., ¶ 14.  This resulted in another short pay; this time in the amount of $23.61 (payment of $106.00 - $2.38 due from June 2010 - $25.00 late charge - $102.23 monthly payment = ($23.61)).  *Id.*

Plaintiff made her next payment on August 5, 2010, and despite owing $125.84, representing the $23.61 balance owed from July, plus the monthly payment amount of $102.23, Plaintiff's payment was again only $106.00.  Jones Decl., ¶ 15, and Ex. 2, Account Statement.  As a result, the payment was insufficient to satisfy the amount due, and Plaintiff still owed $19.84 for August 2010 (payment of $106.00 - $23.61 due from July 2010 - $102.23 monthly payment = ($19.84)).  Jones Decl., ¶ 15.

Plaintiff did not make her September payment on time nor did she pay within the five-day grace period.  Ex. 2, Account Statement.  Plaintiff also did not make her October payment on time or within the five-day grace period.  *Id.*  Payments for both months were made more than ten (10) days after their due dates and more than five (5) days after the expiration of the grace period.  *Id.*  As a result, Plaintiff incurred and paid a late charge of $25.00 on September 10, 2010 and another one on October 13, 2010.  *Id.*  These late charges were paid from Plaintiff's untimely September and October payments, but before paying the late charges, Plaintiff's payments were applied to satisfy the balance owed on the payment due the previous month (*i.e.*, in the order the payments became due), then to the late charge assessed for the month the payment was received late and then to accrued interest and principal.  Jones Decl., ¶¶ 16-

8

17, and Ex. 1, Promissory Note (PROMISE TO PAY).  Because Plaintiff's payments for September and October were each in the amount of $106.00 and thus, did not take into consideration the balance owed for the prior month or the late charge, Plaintiff's September 10th payment was short $41.07 (payment of $106.00 - $19.84 due from August 2010 - $25.00 late charge - $102.23 monthly payment = ($41.07)) and her October 13th payment was short $62.30 (payment of $106.00 - $41.07 due from September 2010 - $25.00 - $102.23 monthly payment = ($62.30)).  Jones Decl., ¶¶ 16-17.

Over the next five months (November 2010 through March 2011), Plaintiff made payments of $106 within the five-day grace period, but because each payment was first used to satisfy the balance owed for the scheduled payment due the previous month and then was applied to the scheduled payment due for the month the payment was received, each payment was, in fact, a partial payment of the amount due.[6]  Jones Decl., ¶¶ 18-21, and Ex. 2, Account Statement.  This resulted in two additional late charges; one appearing on the Account Statement on December 6, 2010 and being paid on January 5, 2011, and the other appearing on the Account Statement on February 7, 2011 and being paid on March 1, 2011. *Id.*

Plaintiff's payment history for the next three years shows that she violated the Promissory Note consistently both by failing to make timely payments and by failing to pay proper amounts.  Indeed, Plaintiff's Account Statement shows that for eleven consecutive months starting in April 2011 and ending in February 2012, Plaintiff's payments were made on average 17.5 days after their due dates and not a single payment was made on time or within the five-day grace period.  Ex. 2, Account Statement, and Jones Decl., ¶ 22.  During this same period of time, Plaintiff's payments ranged in amounts from as little as $25 to as much as $100, despite Plaintiff's obligation in the Promissory Note to make a monthly

---

[6] For purposes of the assessment of a late charge, a partial payment is no different than a late payment because in both instances, Plaintiff has failed to pay the amount due on the scheduled date.

payment of $102.23.[7]  *Id.* and Ex. 1, Promissory Note.  After February 2012, every one of Plaintiff's payments was for less than the contractual monthly payment amount or was a partial payment (i.e. an amount less than what was due) because the amount of the payment was less than the balance owed from the prior month(s) plus the monthly payment amount of $102.23, and, in many cases, the payments were made well after the expiration of five-day grace period.  Ex. 2, Account Statement, and Jones Decl., ¶ 22.  As a result, Plaintiff consistently paid late charges either because her payment was late or because she paid less than the amount due or both.  *Id.*  Each time Plaintiff paid a late charge, she did so more than five days *after* the scheduled due date and thus outside of the five-day grace period.  Ex. 2, Account Statement.[8]

## III.      STANDARD OF REVIEW

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citations omitted). Therefore, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By

---

[7] The monthly payment amount of $102.23 is actually the minimum amount due each month on the Promissory Note.  It does not include any late charges that a borrower may incur as a result of an untimely payment and it assumes each month's payment is for the full amount owed.

[8] The Account Statement reflects a payment in the amount of $102.00 being posted on September 6, 2012 at 6:43 am.  Ex. 2, Account Statement.  The Account Statement also reflects that a portion of this payment was applied to pay a late charge that posted on Plaintiff's account on the same date, but hours later at 8:58 pm.  *Id.*  Lendmark's records relating to these two accounting entries reflect that the September 6, 2012 payment actually posted on Ms. Dargan's account on September 7, 2012 and, for reasons that remain unknown, was manually backdated.  Jones Decl., ¶ 23.  Accordingly, the late fee that posted on Ms. Dargan's account at 8:58 pm on September 6, 2012 was actually paid on September 7, 2012, outside of the five-day grace period.

its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law.

Although the evidence is to be viewed in the light most favorable to the non-moving party "[a] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993).

Applying these standards here, there is no dispute of material fact and Lendmark is entitled to the entry of judgment as a matter of law on Plaintiff's remaining claims for violation of CLEC and breach of contract.

## IV.     ARGUMENT

**Plaintiff's Remaining Claims For Breach Of Contract And Violation Of CLEC Fail As A Matter Of Law Because The Undisputed Facts Show That Each Time Plaintiff Paid A Late Charge It Was After The Expiration Of The Five-Day Grace Period.**

Plaintiff claims that Lendmark violated CLEC and therefore also breached the Promissory Note when it "assessed late fees . . . prior to the expiration of [Plaintiff's] 5 day grace period after missing a

11

scheduled or deferred payment."  ECF No. 2, Complaint, ¶ 47.  Plaintiff ostensibly bases her claim on information appearing on an internal account document maintained by Lendmark for bookkeeping purposes.  Plaintiff's Account Statement here shows that each time Plaintiff failed to make a scheduled payment or did not make a complete payment within five days after the payment's due date, a late charge was assessed.  According to Plaintiff, because her account statement reflected a late charge being assessed sometime between 8:45 pm and 10:30 pm on the fifth day of the grace period (as opposed to 12:01 a.m. the next day), Lendmark violated CLEC and breached the late fee provision in the Promissory Note.  Plaintiff's claims are legally and factually without merit.

Neither CLEC nor Plaintiff's Promissory Note mention the "assessment" of late charges.  Rather, as this Court previously recognized, "CLEC authorizes a credit grantor to charge a late fee if 'the agreement, note, or other evidence of the loan permits.'"  ECF No. 24, Memorandum Opinion at 15 (quoting CL § 12-1008(b)).  Plaintiff's Promissory Note requires Plaintiff "to pay a late charge" any time she fails to "pay any installment within 5 days after its scheduled or deferred due date."  Ex.1, Promissory Note.  Plaintiff's payment was due on the first day of every month, which meant she had until the sixth day of the month to make her payment in full without being obligated to pay a late charge.  However, as reflected in Plaintiff's Account Statement attached as Exhibit 2, Plaintiff routinely failed to make her payment on time and/or in the amount due, and, as a result, paid a late charge.  Each time Plaintiff paid a late charge, she did so ***after*** the end of the five-day grace period.  Indeed, there is not a single occasion where Plaintiff paid a late charge "prior to the expiration of her 5 day grace period."  *Compare* Compl., ¶ 47, *with* Ex. 2, Account Statement; *see* Jones Decl., ¶ 23.  Plaintiff's payment of late charges and Lendmark's collection of those charges are therefore consistent with the terms of the

12

Promissory Note and cause the remaining claims for breach of contract and violation of CLEC to fail as a matter of law.

Lendmark anticipates that Plaintiff will argue that she was assessed a late charge on her "Account Statement" before the end of the grace period.  Any such contention would be groundless.  As noted earlier, *see* fn. 2, *supra*., account statements are internal documents used by Lendmark solely for bookkeeping purposes and are not regularly sent or provided to borrowers nor can they be accessed on-line by borrowers.   Jones Decl., ¶ 3.   Moreover, nothing in Plaintiff's Promissory Note triggers an obligation to pay a late charge on the basis of her Account Statement.  The only trigger for a late charge is Plaintiff's failure to make a timely payment in the amount due.  Because Plaintiff failed time and again to make timely and/or complete payments, she was obligated to pay late charges.

**V.      CONCLUSION**

For the reasons set forth herein, Lendmark is entitled to the entry of summary judgment on Plaintiff's remaining claims for violation of CLEC and breach of contract.

Respectfully submitted,

_____
/s/
Brian L. Moffet
Fed. Bar No. 13821
GORDON FEINBLATT  LLC
The Garrett Building
233 East Redwood Street
Baltimore, Maryland  21202-3332
Telephone No.: 410/576 - 4291
Fax No.: 410/576 – 4269
Email: bmoffet@gfrlaw.com
**Attorneys for Defendant**
**Lendmark Financial Services, Inc. n/k/a**
**Lendmark Financial Services, LLC**

13
