```
            IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

MICHELLE WILLIAMS,                  *

    Plaintiff,                   *

    v.                           *
                                                                                * CIVIL NO.: WDQ-13-1740

LENDMARK FINANCIAL SERVICES,
INC.                                *

    Defendant.                   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Michelle Williams sued Lendmark Financial Services, Inc. ("Lendmark Financial"), individually and on behalf of all others similarly situated,[1] in the Circuit Court for Baltimore City for

---

[1] Williams brought this action "on behalf of a Class which consists of: All persons who were charged a late fee by Lendmark Financial in connection with a credit contract governed by CLEC." ECF No. 2 ¶ 60. The proposed class consists of Williams and "at a minimum, of several hundred (and likely thousands) of persons." Id. ¶¶ 61-62. The proposed class excludes:

> (a) those individuals who now are or have ever been executives of the Defendant and the spouses, parents, siblings, and children of all such individuals; (b) any individual against whom a judgment has been granted in favor of Lendmark Financial on the account at issue on or before the date of the filing of this Complaint; (c) any individual who was granted a discharge pursuant to the United States Bankruptcy Code or state receivership laws after the date of his or her Installment Contract.

ECF No. 2 ¶ 60.

violations of the Maryland Credit Grantor Closed End Credit Provisions ("CLEC")[2] and breach of contract.  Pending is Lendmark Financial's motion for summary judgment.  No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the following reasons, the motion will be granted.

I.      Background[3]

On November 17, 2009, Williams[4] obtained a personal loan from Lendmark Financial[5] in the principal amount of $2,620.72. ECF No. 32-2 at 2.  The loan was documented in the "Combination Statement of Transaction, Promissory Note & Security Agreement" ("Promissory Note").[6]  *See id.*  The Promissory Note included credit life and disability insurance, and a $100 "Loan Fee." *Id.*  The loan had an annual interest rate of 20.24 percent. *Id.*.  Williams was scheduled to make 36 monthly payments of

---

[2] Md. Code Ann., Com. Law §§ 12-1001 *et seq.*

[3] The facts are from Lendmark Financial's motion for summary judgment (ECF No. 32), Williams's opposition (ECF No. 33), Lendmark Financial's reply (ECF No. 34), and their accompanying exhibits.

[4] Michelle Williams is a citizen of Maryland.  ECF No. 2 ¶ 16. Her name was Michelle Dargan when she signed the Promissory Note.  *See* ECF No. 13-2.

[5] Lendmark Financial is a sub-prime lender that has issued more than 1,000 CLEC loans in Maryland annually since 2005 at interest rates as high as 24 percent.  ECF No. 2 ¶¶ 2-6. Lendmark Financial is a Georgia corporation with its principal place of business in Covington, Georgia.  *Id.* ¶ 19.

[6] The Promissory Note states that it is governed by Maryland law, including the CLEC.  ECF No. 32-2 at 3.

$102.23 with the final payment to be made on December 1, 2012. *Id.* The total payment on the loan was disclosed as $3,680.28. *Id.*

The Promissory Note required Williams to make monthly payments on the first day of each month starting in January 2010. ECF No. 32-2 at 2. The Note also provided that "[i]f [Williams] d[id] not pay any installment within 5 days after its scheduled or deferred due date, [she] agree[d] to pay a late charge of the greater of 10% of the unpaid amount of the installment or $25.00." *Id.* The Note did not contain any information about how the payments were to be made beyond including the address of the "Lender." *See id.* Patsy Jones, Lendmark Financial's Assistant Vice President of Branch Administration, declares that borrowers had three payment options, and that these options were communicated to Williams.[7] *See* ECF No. 32-4 at 2-3.

> First, the borrower could make a payment at any Lendmark branch office (as opposed to the specific branch office identified in the Promissory Note). All Lendmark branch officers in Maryland maintain the same minimum hours of operation. They all open no later than 8:30 a.m. and close no earlier than 5:30 p.m. Monday through Friday. Lendmark's branch offices may open earlier or stay open later and be open for some period of time on Saturdays at the discretion of

---

[7] Williams does not argue that there were other ways to pay her bill or that the payment information was not communicated to her. Instead, she asserts that Jones's information is irrelevant and "the only relevant evidence . . . is the Loan Agreement and the Repayment History." *See* ECF No. 33 at 9.

3

branch management. Second, a borrower could make a monthly payment by mailing the payment to Lendmark. Third, a borrower could make a monthly payment by calling Lendmark during the time that a Lendmark employee is physically present at a Lendmark business location which is typically between the hours of 8:30 a.m. and 5:30 p.m. There is no mechanism or means by which a borrower can make a payment after Lendmark's close of business. Lendmark does not have lockboxes to collect payments nor does Lendmark provide on-line payment services.

*Id.*[8]

In administering its loan accounts, Lendmark Financial uses an automated program known as the GOLD Point System ("the System"). ECF No. 32-4 at 3. The System updates in real time and "payments are reflected immediately upon receipt and entry by Lendmark, regardless of the method of payment." *Id.* The System "is programmed to run after the close of business on each regularly scheduled business day." *Id.* Therefore, if a borrower does not make a required payment by the close of business on the last day of his grace period, the System will assess a late fee to the borrower's account after the close of business on that day because there is no longer any way that the borrower can make a timely payment.[9] *See id.* Each month,

---

[8] Lendmark Financial's documents show that Williams "mailed all but one of her payments to Lendmark at its branch office located at 7620 Belair Road in Baltimore, Maryland. The only payment that was not mailed was hand-delivered to Lendmark at the same address." ECF No. 32-4 at 3.

[9] "There is one notable exception. In the event the final day of the grace period falls on a Saturday, Sunday, or holiday, the

Lendmark Financial would mail the borrower a statement "setting forth the date on which the borrower's next payment [was] due and the total amount owed for the month in aggregate and broken down according to (i) the amount of the regular payment owed; (ii) the balance owed from any prior payment; (iii) the amount of any late fees or delinquency charges due; and (iv) other charges." ECF No. 32-4 at 2.

Between April 2010 and May 2013, Williams made numerous payments after the end of her monthly grace period, and almost all of these payments were in sufficient amounts to pay off her late fees and delinquency charges from the prior months. *See* ECF No. 32-3 (Williams's Account Statement); ECF No. 32-4 at 4-7 (explaining payment history and Account Statement). After the close of business of the fifth day of her grace period each month, the System would assess a late fee to Williams's account. Williams's monthly statements simply provide the date when the late charges were assessed---the last day of the grace period; the monthly statements do not give a specific time for the assessment. *See* ECF No. 33-2 at 3 (borrower's statement for December 2013). Lendmark Financial's internal Account Summary shows that all late fees were assessed between 8:40 pm and 9:02

---

grace period is automatically extended and [the System] does not assess a late fee unless payment is not received by close of business the following regular business day." ECF No. 32-4 at 4.

pm after the close of business on the fifth day of the grace period. *See* ECF No. 32-3.

On May 9, 2013, Williams sued Lendmark Financial in the Circuit Court for Baltimore City, Maryland. *See* ECF Nos. 1, 2.[10] Williams alleged that Lendmark Financial assessed late fees to Williams and class members "prior to the expiration of her 5 day grace period after missing a scheduled or deferred payment." ECF No. 2 ¶ 47. In essence, Williams alleges that Lendmark Financial violated the promissory note's provisions and Maryland law by allowing the System to assess late payments after the close of business on the last day of grace periods rather than waiting until midnight--the beginning of the first day after the grace period. Williams had never alleged or argued that she attempted to make a payment to Lendmark Financial between the close of business on the last day of her grace period and midnight the next morning. *See, e.g.,* ECF No. 33.

On June 14, 2013, Lendmark Financial removed the action to this Court under the Class Action Fairness Act of 2005 ("CAFA").[11] *See* ECF No. 1. On June 28, 2013, Lendmark Financial

---

[10] Williams asserted five claims against Lendmark Financial: violations of the CLEC (Count I), breach of contract (Count II), violations of CL § 14-1315 (Count III), violations of the MCPA (Count IV), and negligent misrepresentation (Count V). ECF No. 2 ¶¶ 73-126.

[11] *See* 28 U.S.C. § 1332(d).

moved to dismiss for failure to state a claim. ECF No. 13. On March 25, 2014, the Court dismissed all counts in the complaint except the claims alleging violation of the CLEC and breach of contract based on violation of the CLEC. ECF Nos. 24-25.

On October 17, 2014, Lendmark Financial moved for summary judgment on the remaining claims. ECF No. 32. On November 17, 2014, Williams opposed the motion. ECF No. 33. On December 18, 2014, Lendmark Financial replied. ECF No. 35.

## II. Analysis

### A. Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[12] In considering the motion, the judge's function is "not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

---

[12] Rule 56(a), which "carries forward the summary-judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment." Fed. R. Civ. P. 56 advisory committee's note.

The Court must "view the evidence in the light most favorable to . . . the nonmovant and draw all reasonable inferences in [her] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B.  Lendmark Financial's Motion

Williams argues that Lendmark Financial violated the CLEC by assessing late fees before the five-day grace period required by the Promissory Note. *See* ECF No. 16 at 25-27. Lendmark Financial asserts that it assessed all late fees in accordance with the Promissory Note and Maryland law. *See* ECF No. 32 at 11-13.[13]

The CLEC authorizes a credit grantor to charge a late fee if "the agreement, note, or other evidence of the loan permits." Md. Code Ann., Comm. Law § 12-1008(b). Therefore, whether Lendmark Financial violated the CLEC is a question of contract interpretation--Did Lendmark Financial breach the provisions of

---

[13] Lendmark Financial also argues that it never "charged" Williams in violation of the CLEC. ECF No. 34 at 5 (citing CL § 12-1008(b) ("no late or delinquency charge may be charged . . . .")). Because the Court can resolve this motion under the terms of the Promissory Note, it will not address the statutory interpretation argument raised by Lendmark Financial in its reply.

the Promissory Note by assessing late fees after the close of business on the last day of the grace period?

"Maryland adheres to the principle of the objective interpretation of contracts." *Cochran v. Norkunas*, 919 A.2d 700, 709 (Md. 2007). "If a contract is unambiguous, the court must give effect to its plain meaning and not contemplate what the parties may have subjectively intended by certain terms at the time of formation."[14] *Nova Research, Inc. v. Penske Truck Leasing Co., L.P.*, 952 A.2d 275, 283 (Md. 2008). "It is a fundamental principle of contract law that it is 'improper for the court to rewrite the terms of a contract, or draw a new contract for the parties, when the terms thereof are clear and unambiguous, simply to avoid hardships.'" *Calomiris v. Woods*, 727 A.2d 358, 368 (Md. 1999) (quoting *Canaras v. Lift Truck Services*, 322 A.2d 866, 873 (Md. 1974)).

Courts must consider contracts "from the perspective of a reasonable person standing in the parties' shoes at the time of the contract's formation." *Ocean Petroleum Co. v. Yanek*, 5 A.3d 683, 690 (Md. 2010); *see also Cochran v. Norkunas*, 919 A.2d 700, 709 (Md. 2007) ("[T]he true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have

---

[14] "The interpretation of a contract, including the determination of whether a contract is ambiguous, is a question of law." *Clancy v. King*, 954 A.2d 1092, 1101 (Md. 2008).

9

thought it meant.") (quotation omitted).  "The language of a contract is only ambiguous if, when viewed from this reasonable person perspective, that language is susceptible to more than one meaning." *Ocean Petroleum Co.*, 5 A.3d at 690-91.

In this case, the Late Charge provision of the Promissory Note provides:

> If I do not pay any installment within 5 days after its scheduled or deferred due date, I agree to pay a late charge of the greater of 10% of the unpaid amount of the installment or $25.00.  Only one late charge shall be charged on any installment or part of an installment.  For the purpose of computing late charges, all payments shall be applied to scheduled payments in the order they become due.  The late charge will be in addition to daily accrued interest.

ECF No. 32-2 at 2.  Williams argues that "5 days after its scheduled or deferred due date" means midnight or the beginning of the sixth day.  *See* ECF No. 33 at 9.  Lendmark Financial asserts that "day" means a business day; therefore, the "day" ends at the close of business.  *See* ECF No. 32 at 12-13.  Further, Lendmark Financial argues that the "account statements [made by the System at the close of business] are internal documents used by Lendmark solely for bookkeeping purposes and are not regularly sent or provided to borrowers nor can they be accessed on-line by borrowers." *Id.* at 3.

A reasonably prudent person considering a payment provision of a contract would interpret the word "day" based on how payments are made.[15] If a contract permits payments through an online, automated system, then it would be reasonable to read "day" as a 24-hour period. Similarly, it would be reasonable to read "day" as 24-hours if payments could be made at a location drop-box. However, if payments were only possible in person or when received by the Lender through the mail, then a reasonable person would read "day" as a business day which ends at the close of business of the Lender.

The Promissory Note does not contain any explicit instructions about the manner in which Williams could make payments. Lendmark Financial's address in Baltimore is included at the top of the Note under a paragraph detailing that monthly installment payments are due at the first of each month. See ECF No. 32-2 at 2. There is nothing in the contract about a website for Lendmark Financial or a portal for borrowers' payments. See id. Accordingly, without payment information, the term "day" in the contract is, at best, ambiguous.

---

[15] Cf. Sagner v. Glenangus Farms, 198 A.2d 277, 283 (Md. 1964) ("A recognized rule of construction in ascertaining the true meaning of a contract is that the contract must be construed in its entirety and, if reasonably possible, effect must be given to each clause so that a court will not find an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed.").

Therefore, the Court "must consider any extrinsic evidence which sheds light on the intentions of the parties at the time of the execution of the contract." *Cnty. Comm'rs v. St. Charles*, 784 A.2d 545, 556 (Md. 2001).

The only extrinsic evidence before the Court detailing how Lendmark Financial received payments is the declaration of Patsy Jones. *See* ECF No. 32-4. Williams does not offer any conflicting evidence or state that she was unaware of how payments were received. *See* ECF No. 33. In fact, records show that Williams consistently followed the payment procedures detailed by Jones. *See* ECF No. 32-4 at 3. Thus, there is no issue of material fact regarding Lendmark Financial's payment procedures.[16]

Lendmark Financial permitted payments in person at Lendmark locations, by mail, and by phone. *See* ECF No. 32-4 at 3. All of these processes require the borrower to provide Lendmark Financial her payment before the close of business on the last day of the grace period because there are no drop-boxes or online payment platform. *Id.* Because it is impossible for a borrower to make a timely payment after the close of business on

---

[16] Williams's only argument against Jones's statement was that it was irrelevant and "the only relevant evidence . . . is the Loan Agreement and the Repayment History." *See* ECF No. 33 at 9. If the Promissory Note was unambiguous, then Williams would be correct. The Note, however, is ambiguous, and, thus, Jones's declaration becomes relevant to the intentions of the parties and their course of conduct.

the last day of the grace period, the payment is officially "late" at that time. Therefore, it is apparent that the meaning of "day" within the Promissory Note means a business day and does not extend until midnight.

Because the undisputed facts in this case show that the System only assessed late fees to Williams between 8:40 p.m. and 9:02 p.m.--after the close of business, it is apparent that Lendmark Financial did not breach the contract or violate the CLEC. Accordingly, the Court will grant Lendmark Financial's motion for summary judgment.

III. Conclusion

For the reasons stated above, Lendmark Financial's motion for summary judgment will be granted.

_7/27/15_____                    _____
Date                                       William D. Quarles, Jr.
                                           United States District Judge